E-FILED
Monday, 14 September, 2026 11:59:52 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JARVON CROSSLEY,<br>Plaintiff,<br><br>v.<br><br>FAIRLESS, *et al.*,<br>Defendants. | Case No. 2:26-cv-02090-JEH |

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Danville Correctional Center ("Danville"), filed an Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 11). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**II**

Plaintiff files suit against Defendants Dr. Fairless, Sergeant Saldana, and Danville Correctional Center Mental Health Department. Plaintiff does not name

Lieutenant Esteves as a Defendant in his Amended Complaint. Therefore, Defendant Esteves is DISMISSED WITHOUT PREJUDICE.

Plaintiff alleges he was housed in the restrictive housing unit at Danville between approximately August 9-29, 2025. During this time, the Danville Dietary Department was experiencing a shortage of protein packs, which is a mandatory part of Plaintiff's daily Halal diet. Plaintiff states that most staff members allowed inmates who received the Halal diet to choose between the regular meal tray or the Halal diet while in restrictive housing when there was a shortage of protein packs. On August 29, 2025, Plaintiff alleges Defendant Sergeant Saldana did not allow him to choose between the regular meal tray and the Halal diet.

On August 29, 2025, Plaintiff asked Defendant Saldana for permission to speak with a psychiatrist because his grandfather had passed away, he was in segregation, and he was being denied food. Defendant Saldana allegedly told Plaintiff that he could not speak with a mental health professional unless he wanted to harm himself. Plaintiff responded that a psychiatrist was always on call, especially for inmates being housed in restrictive housing. Defendant Saldana again told Plaintiff to call a crisis if he wanted to see a doctor.

Plaintiff decided to call at crisis. Defendant Saldana then placed Plaintiff in an office to speak with Lieutenant Esteves, who informed Plaintiff that she would conduct his crisis assessment and relay the information to the doctor. Plaintiff alleges he was unsure if Esteves was qualified to hear personal information, but he informed Esteves that he simply needed to talk to someone and was not going to harm himself or others. After Esteves spoke with Defendant Dr. Fairless, she informed Plaintiff that Dr. Fairless was placing Plaintiff on crisis watch with a 30-minute watch. Dr. Fairless allegedly instructed Plaintiff to remove his clothing and threatened to call a tactical team if he refused. Plaintiff alleges he informed Dr.

Fairless that he is Muslim, and it is very inappropriate to be naked in front of women and others.

Plaintiff alleges Defendant Saldana escorted him to a crisis watch cell. Plaintiff removed his clothes and threw them at Saldana's feet. Plaintiff alleges Saldana further humiliated him by ordering him to pick up the clothes and hand them over. Saldana allegedly threatened to spray Plaintiff's private area with mace if he did not comply. When Plaintiff handed Saldana the clothes, Saldana allegedly "just looked at [Plaintiff] for a long period of time with pure lust in his eyes." *Id.* at p. 7. Saldana shut the cell door and continued looking at Plaintiff through the glass. Plaintiff alleges he was so humiliated and disgusted that he charged and spit on the glass. Salanda then allegedly said, "I will get you later." *Id.*

Plaintiff alleges the crisis watch cell was unsanitary. Plaintiff states that the cell was infested with mice, and he "fought [the mice] all night just not to get bitten." *Id.* at p. 8. Plaintiff states that the water in the sinks and toilet was not clear, the blanket and mattress were dirty, and there was no toilet tissue, soap, or a cup for water. Plaintiff alleges the air conditioner was on, and he was completely naked. Plaintiff alleges he called for a correctional officer for hours until Saldana arrived. Plaintiff allegedly asked Salanda for cleaning supplies and toilet tissue and to use the washroom, but Saldana denied the requests.

Plaintiff alleges Dr. Fairless was not working during the weekend, and Plaintiff remained confined to the crisis watch cell for three days, from approximately August 29-31, 2025. Plaintiff alleges Dr. Fairless did not return to examine him during the crisis watch.

After Plaintiff was released from crisis watch, he was placed back in segregation. Saldana allegedly told Plaintiff to request another crisis so he could see Plaintiff again. Plaintiff alleges this comment made him feel depressed, disgusted, and violated.

**III**

First, Plaintiff alleges the Dietary Department was short on protein packs between August 9-29, 2025. Plaintiff claims Defendant Saldana did not allow him to choose between the regular diet tray and the Halal diet on August 29, 2025. These sparse allegations are insufficient to state a constitutional violation against Saldana.

Plaintiff alleges Defendant Dr. Fairless placed him on crisis watch on August 29, 2025, even though Plaintiff informed Dr. Fairless that he was not a threat to himself or others. Dr. Fairless allegedly forced Plaintiff to undress, even though Plaintiff informed Dr. Fairless that he is Muslim and it is very inappropriate for him to be naked in front of others. Dr. Fairless threatened to call a tactical team if Plaintiff refused to undress. Plaintiff removed his clothing in front of Saldana. Plaintiff does not allege if he informed Saldana that he is Muslim. Plaintiff's allegations are insufficient to state a claim for relief.

Plaintiff claims he was confined to the crisis watch cell for three days from approximately August 29-31, 2025. Plaintiff alleges Dr. Fairless did not check on him that weekend. By Plaintiff's own admission, he was not a threat to himself or others. Plaintiff fails to state a claim against Dr. Fairless. Therefore, Dr. Fairless is dismissed without prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Plaintiff alleges the conditions of his crisis watch cell were unsanitary, that he informed Saldana about the conditions and asked for cleaning supplies and toilet tissue, but Saldana refused to take action. "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)). "Prisoners are, however, entitled to 'the minimal civilized measure of life's necessities.'" *Dixon*, 114 F.3d at

642 (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoted citations omitted).

To proceed on a conditions of confinement claim, Plaintiff must establish both an objective and subjective component. "To satisfy the objective component, a plaintiff must show that the deprivation alleged is 'objectively, sufficiently serious.' Specifically, the plaintiff must show that 'the prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities." *Staggs v. Hollenbeck*, 248 F.3d 1159 (7th Cir. 2000) (internal quotation marks and citations omitted). To establish the subjective component, a plaintiff must show that a defendant was deliberately indifferent, "that the official knew about the risk of harm, had the ability to prevent the harm, and failed to do so." *Williams v. Schmidt*, No. 14-487, 2019 WL 1046167, at *1 (W.D. Wis. Mar. 5, 2019) (citing *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009)). The Court finds that Plaintiff's allegations regarding the conditions of the crisis watch cell on or about August 29-31, 2025, are sufficient to proceed on an Eighth Amendment conditions of confinement claim against Defendant Saldana.

Plaintiff claims Saldana threatened to "get [him]" and commented that he hoped Plaintiff would declare another crisis. (Doc. 11 at p. 8). "Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment." *Boston v. Brown*, No. 25-CV-1525-DWD, 2025 WL 2377992, at *2 (S.D. Ill. Aug. 15, 2025) (citing *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review)). "[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal*, 803 F.3d at 358; *see also Smith v. Myers*, No. 118CV02255TWPDLP, 2018 WL 3631285, at *1 (S.D. Ind. July 30, 2018)

("[A]lthough indefensible and unprofessional, isolated verbal abuse, harassment, and unprofessional conduct do not rise to the level of a constitutional violation for which relief may be granted in a civil rights case.") (citing *DeWalt v. Carter*, 224 F.3d 607, 612 n. 3 (7th Cir. 2000)). "The constitution does not require prison staff to have 'genteel language and good manners.'" *Terrell v. Dodge Corr. Inst.*, No. 21-CV-50-JDP, 2021 WL 1546090, at *2 (W.D. Wis. Apr. 20, 2021) (quoting *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019)). Although the comments were unprofessional, Saldana's isolated insults do not rise to the level of a constitutional violation.

Finally, Plaintiff named Danville Correctional Center Mental Health Department as a Defendant. A correctional center is not a "person" amenable to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Furthermore, Danville Correctional Center, as a State agency, enjoys Eleventh Amendment immunity in a suit for money damages. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Danville Correctional Center Mental Health Department is dismissed with prejudice.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment conditions of confinement claim against Defendant Saldana based on the alleged conditions of Plaintiff's crisis watch cell on or about August 29-31, 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendant Danville Correctional Center Mental Health Department is DISMISSED WITH PREJUDICE. Defendants Esteves and Dr. Fairless are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendants Esteves and Fairless.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendant by mailing a waiver of service. If Defendant fails to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5) Defendant shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's position. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered. If Defendant has not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6) If Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk

Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of Defendant's forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the deposition.

9) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) Plaintiff shall be provided a copy of all pertinent medical records upon request.

11) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization

to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: September 14, 2026

s/Jonathan E. Hawley
U.S. District Judge